# EXHIBIT E

11/25/2025 6:51 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-010432
Rosa Oneal

Cause No. D-1-GN-25-010432

| | | |
|---|---|---|
| Cynthia Waide,<br>*Plaintiff*(s), | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| v. | §<br>§<br>§ | TRAVIS COUNTY, TEXAS |
| Carrington Mortgage Service LLC,<br>*Defendant(s),* | §<br>§ | 353RD, DISTRICT COURT<br>_______ JUDICIAL DISTRICT |

**PLAINTIFF'S ORIGINAL PETITION FOR DECLARATORY JUDGMENT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF**

TO THE HONORABLE JUDGE OF THE COURT:

NOW COMES CYNTHIA WAIDE the Plaintiff, complaining of Defendant CARRINGTON MORTGAGE SERVICE LLC and would show the Court the following:

**Discovery Control Plan**

1. CYNTHIA WAIDE proposes that discovery in this case be conducted under Discovery Control Plan Level 2. Tex. R. Civ. P. 190.3

**Parties**

2. CYNTHIA WAIDE is a natural person whose primary place of residence is in TRAVIS County Texas.

3. Defendant, CARRINGTON MORTGAGE SERVICE LLC is a national banking company and may be served with process by and through its registered agent Registered Agent Solutions, Inc., at 211 E. 7th St. Suite 620, Austin, Texas 78744

**Venue and Jurisdiction**

4. This Court has jurisdiction over the subject matter of this case because the amount in controversy exceeds this Court's minimum jurisdictional requirements.

5. The Court has personal jurisdiction over the Defendant under Sec. 17.003 of the Texas Civil Practices and Remedies Code, because the real property, the subject of this lawsuit, is located in Texas.

6. Venue in TRAVIS County, Texas is proper in this cause under Section 15.011 of the Texas Civil Practice and Remedies Code because the real property, the subject of this lawsuit, is situated in TRAVIS County, Texas.

**Prior History**

7. May 1, 2025, the Plaintiff filed an original petition and application for a temporary restraining order under Cause 219-03153-2025 on the basis of breach of contract for refusing and failing to give the Plaintiff a payoff preventing the Plaintiff from paying off the loan before the May 6, 2025 trustee auction of the Property.
8. Subsequently, the Defendant removed Cause 219-03153-2025 to federal court. May 19, 2025, the United States District Court, Western District of Texas, Austin Division signed an order granting the Parties Joint Stipulation of Dismissal With Prejudice under case number Case No. 1:25-CV-00735-ADA.

**Brief Summary**

9. The December 2, 2025, scheduled substitute trustee sale of the Property (the "Substitute Trustee Sale") is unlawful; because the Defendant breached the Deed of Trust (DOT), by refusing and failing to accept the outstanding ad valorem taxes and insurance premium to cure the Note before December 2, 2025; Additionally, the 736 Order, required to foreclose on a reverse mortgage lien is automatically stayed upon the filing of this Petition**.**

**Factual Background**

**The Property**

10. The Plaintiff is the owner of property at 5807 Woodview Avenue, Austin, Texas 78756 ("Homestead" or "Property" or "real property"). The Plaintiff resides at the address, which is his homestead.

**The Deed of Trust**

11. January 8, 2018, the Plaintiff closed on a federally related reverse mortgage loan for $831,000.00 secured by a Deed of Trust ("DOT"). See Exhibit A
12. The Defendant's reverse mortgage lien is a lien created under Texas Constitution, Article XVI, §50(a)(7). See Exhibit B
13. The original mortgagee is REVERSE MORTGAGE FUNDING LLC.
14. CARRINGTON MORTGAGE SERVICE LLC is the current lender/mortgagee.
15. CARRINGTON MORTGAGE SERVICE LLC is the current loan servicer.
16. Attorneys of Mackie Wolf Zientz & Mann, P.C. are designated as the purported current trustee.
17. According to a recent Broker's Price Opinion, the value of the property is $670,000.
18. The payoff is roughly $550,000.
19. The Plaintiff has roughly $120,000 of equity in the Property.
20. Recently, the loan servicer sent the Plaintiff a cure notice stating the outstanding ad

valorem taxes and insurance premiums were $48,348.19.

21. July 3, 2025, the Plaintiff tendered curing the default and remitted the outstanding ad valorem taxes and insurance premiums, $48,348.19.  See Exhibit C

22. However, July 22, 2025, the loan servicer returned the outstanding ad valorem taxes and insurance premiums of $48,348.19, and refused to accept the cure amount.  See Exhibit D

23. Recently, the purported current trustee posted a Substitute Trustee Sale Notice in the TRAVIS County Clerk's Office.

24. The Plaintiff can cure the Default by remitting the outstanding ad valorem taxes and insurance premiums of $48,348.19.

25. Since Plaintiff has tendered remitting the outstanding ad valorem taxes and insurance premium of $48,348.19, the Defendant has refused to accept the outstanding ad valorem taxes and insurance premium.

26. If the December 2, 2025, substitute trustee sale transpires, the Plaintiff stands to suffer irreparable harm, because the Plaintiff will lose title to her Property and roughly $120,000 of equity in the Property.

**TRCP 736 Order**

27. In order to foreclose under a lien created under Texas Constitution, Article XVI, §50a(7), such as the Defendant's reverse mortgage lien, the Defendant must obtain a court order, and the Texas Legislature prescribed Texas Rules of Civil Procedure (TRCP), Rule 736 Orders for this purpose. See Exhibit E

28. February 25, 2025, the Defendant obtained a Rule 736 Order to Foreclose on the DOT, under cause D-1-GN-24-009682, as required by TRCP 736.

29. Under TRCP 736.11, entitled "Automatic Stay and Dismissal, If Independent Suit Filed," a Rule 736 Order to foreclose is automatically stayed upon the borrower filing an independent original petition in a court of competent jurisdiction that puts in issue any matter related to the origination, servicing, or enforcement of the loan agreement, contract, or lien sought to be foreclosed prior to 5:00 p.m. on the Monday before the scheduled foreclosure sale.  See Exhibit F

30. The Defendant's alleged breach of the DOT, stated above, relates to the enforcement of Defendant's equity lien. Therefore, TRCP 736 Order the loan servicer obtained under cause D-1-GN-24-009682, as required by law, the Rule 736 Order is automatically stayed.

**<u>Arguments</u>**

**Breach of Contract**

31. The December 2, 2025 scheduled Substitute Trustee Sale is unlawful because the Defendant breached the Deed of Trust, by refusing and failing to give the Plaintiff an accurate, itemized payoff statement timely enough to pay off the Note before May 6, 2025; Additionally, the 736 Order under cause D-1-GN-24-009682, required to foreclose on a reverse mortgage lien is automatically stayed upon the filing of this Petition.
32. The essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Hussong v. SCHWAN'S SALES ENTERPRISES, INC.*, 896 S.W.2d 320, 326 (Tex. App. Houston [1st Dist.] 1995, no writ).
33. The Deed of Trust is a valid contract.
34. The Defendant's conduct delineated above, in not accepting the outstanding ad valorem taxes and insurance premium, so that Plaintiff could cure the default before December 2, 2025, amounts to a breach of contract.
35. The First Court of Appeals of Texas stated that when contracts have independent terms or subsidiary terms, the breach of one term by one party of an independent or subsidiary term does not relieve the other party from performance. *See Earl Hayes Rents Cars & Trucks v. Houston,* 557 S.W.2d 316, 320 (Ct of Ap. Tex, First Distr. 1977).
36. Under the Deed of Trust and contract law jurisprudence, if one party tenders performance, but the second party prevents performance, the second party is in breach. *Southwell v. Univ. of Incarnate Word*, 974 S.W.2d 351, 354–55 (Tex.App.-San Antonio 1998, pet. denied).
37. As a result of the Defendant's breach, the Plaintiff cannot cure the default before the December 2, 2025, scheduled substitute trustee sale.
38. If the December 2, 2025, substitute trustee sale transpires, the Plaintiff stands to suffer irreparable harm, because the Plaintiff will lose title to her property and roughly $120,000 of equity in the Property.

**Tex Const, Art XVI, §50a(6)(Q)**

39. In order to foreclose under a lien created under Texas Constitution, Article XVI, §50a(7), such as the Defendant's reverse mortgage lien, the Defendant must obtain a court order, and the Texas Legislature prescribed Texas Rules of Civil Procedure (TRCP), Rule 736 Orders for this purpose.

40. February 25, 2025, the Defendant obtained a Rule 736 Order to Foreclose on the DOT, under cause D-1-GN-24-009682, as required by TRCP 736.
41. Under TRCP 736.11, entitled "Automatic Stay and Dismissal, If Independent Suit Filed," a Rule 736 Order to foreclose is automatically stayed upon the borrower filing an independent original petition in a court of competent jurisdiction that puts in issue any matter related to the origination, servicing, or enforcement of the loan agreement, contract, or lien sought to be foreclosed prior to 5:00 p.m. on the Monday before the scheduled foreclosure sale.
42. The Defendant's alleged breach of the DOT, stated above, relates to the enforcement of Defendant's equity lien. Therefore, TRCP 736 Order the loan servicer obtained under cause D-1-GN-24-009682, as required by law, the Rule 736 Order is automatically stayed.

**Conditions Precedent**

43. Pursuant to Rule 54 of the Texas Rules of Civil Procedure, all conditions precedent have been performed or have occurred.

**Request for Temporary Restraining Order**

44. Plaintiff requests the Court to dispense with the issuance of a bond, and Plaintiff requests that the Defendant be temporarily restrained, without hearing, and upon notice and hearing be temporarily enjoined, pending further order of this Court, from foreclosing on the Deed of Trust.
45. If a temporary restraining order is not issued today, the Defendant will sell the Plaintiff' homestead and the Plaintiff will be irreparably harmed as stated in the attached affidavit.
46. The Plaintiff is likely to succeed on the merits because, as stated above, the Defendant breached the Deed of Trust (DOT), by refusing and failing to accept the outstanding ad valorem taxes and insurance premium, preventing the Plaintiff from curing the default of the Note; and the Rule 736 Order under cause D-1-GN-24-009682 required to foreclose on a reversed mortgage loan is automatically stayed by the filing of this petition.
47. Granting the temporary restraining order is in the public interest because enforcing contracts and discouraging foreclosures are in the public interest.
48. The Defendant may simply foreclose in 30 days, or recoup whatever expenses incurred by not foreclosing from the Plaintiff, which is permitted by the Deed of Trust; therefore, the potential harm to the Defendant is outweighed by the potential irreparable harm to the Plaintiff.

**Request for Temporary Order**

49. Plaintiff requests that the Court, after notice and a hearing, without the necessity of a bond and to make temporary orders and issue any appropriate temporary injunctions deemed necessary and equitable by the Court.

**Attorney's Fees**

50. Under Section 37.009, Tex Civ. Prac. & Rem Code, Cynthia Waide requests that the Court award them costs and reasonable and necessary attorneys' fees as are equitable and just against CARRINGTON MORTGAGE SERVICE LLC

**Prayer**

WHEREFORE, PREMISES CONSIDERED, the Plaintiff Cynthia Waide prays for the following:

51. Prayer for Declaratory Relief
52. WHEREFORE Plaintiff prays that after notice and hearing the Court declares the Substitute Trustee Sale of the Property is unlawful and must be postponed until: (a) the Defendant accepts the outstanding ad valorem taxes and insurance premium, permitting the Plaintiff to cure the default of the Note.
53. Prayer for Relief

WHEREFORE Plaintiff prays that the Court immediately grant a temporary restraining order restraining Defendant, in conformity with the allegations of this Plaintiff, from the acts set forth above, and Plaintiff prays that, after notice and hearing, this temporary restraining order be made a temporary injunction.

1. Plaintiff prays that the Court, in addition to the temporary restraining orders and temporary injunction order prayed for above, after notice and hearing, grant a temporary injunction enjoining Defendant, in conformity with the allegations of this Petition from the acts set forth above while this case is pending, and enter temporary orders as requested above.
2. Plaintiff prays for expenses, costs and interest as allowed by law.
3. Plaintiff prays for general relief.

Respectfully submitted,

/s/ James Minerve

James Minerve
State Bar No. 24008692
13276 N HWY 183, ste. 209
Austin, Texas 78750

(888) 819-1440 (Office)
(210) 336-5867 (Mobile)
(888) 230-6397 (Fax)
jgm@minervelaw.com
Attorney for Plaintiff
Cynthia Waide

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document was sent to the following in accordance with the Texas Rules of Civil Procedure on this 25th day of November 2025:

Corporation Service Company, registered agent for
CARRINGTON MORTGAGE SERVICE LLC
P.O Box 40761
Lansing, MI 48901-7924

/s/ James Minerve

James Minerve

# GENERAL AFFIDAVIT

**State of Texas** §
**County of Travis** §

**BEFORE ME**, the undersigned Notary, Tuesday on this 25 day of November 2025 personally appeared Cynthia Waide, known to me to be a credible person of lawful age, who being by me first duly sworn, on his oath, deposes and says:

1. I am of sound mind and capable of making this affidavit. I have personal knowledge of the facts stated below. I understand that I can be held criminally responsible if I lie in this statement. This statement is true.
2. The December 2, 2025, scheduled substitute trustee sale of the Property (the "Substitute Trustee Sale") is unlawful; because the Defendant breached the Deed of Trust (DOT), by refusing and failing to accept the outstanding ad valorem taxes and insurance premium to cure the Note before December 2, 2025; Additionally, the 736 Order, required to foreclose on a reverse mortgage lien is automatically stayed upon the filing of this Petition.
3. I am the owner of property at 5807 Woodview Avenue, Austin, Texas 78756 ("Homestead" or "Property" or "real property"). I reside at the address, which is my homestead.
4. January 8, 2018, I closed on a federally related reverse mortgage loan for $831,000.00 secured by a Deed of Trust ("DOT"). See Exhibit A
5. The Defendant's reverse mortgage lien is a lien created under Texas Constitution, Article XVI, §50(a)(7). See Exhibit B
6. The original mortgagee is REVERSE MORTGAGE FUNDING LLC.
7. CARRINGTON MORTGAGE SERVICE LLC is the current lender/mortgagee.
8. CARRINGTON MORTGAGE SERVICE LLC is the current loan servicer.
9. Attorneys of Mackie Wolf Zientz & Mann, P.C. are designated as the purported current trustee.
10. According to a recent Broker's Price Opinion, the value of the property is $670,000.
11. The payoff is roughly $550,000.
12. I have roughly $120,000 of equity in the Property.
13. Recently, the loan servicer sent me a cure notice stating the outstanding ad valorem taxes

and insurance premium is $48,348.19.

14. July 3, 2025, I tendered curing the default and remitted the outstanding ad valorem taxes and insurance premiums, $48,348.19. See Exhibit C
15. However, July 22, 2025, the loan servicer returned the outstanding ad valorem taxes and insurance premiums of $48,348.19, and refused to accept the cure amount. See Exhibit D
16. Recently, the purported current trustee posted a Substitute Trustee Sale Notice in the TRAVIS County Clerk's Office.
17. I can cure the Default by remitting the outstanding ad valorem taxes and insurance premiums of $48,348.19.
18. Since I have tendered remitting the outstanding ad valorem taxes and insurance premium of $48,348.19, the Defendant has refused to accept the outstanding ad valorem taxes and insurance premium.
19. If the December 2, 2025, substitute trustee sale transpires, I stand to suffer irreparable harm, because I will lose title to my Property and roughly $120,000 of equity in the Property.
20. In order to foreclose under a lien created under Texas Constitution, Article XVI, §50a(7), such as the Defendant's reverse mortgage lien, the Defendant must obtain a court order, and the Texas Legislature prescribed Texas Rules of Civil Procedure (TRCP), Rule 736 Orders for this purpose. See Exhibit E
21. February 25, 2025, the Defendant obtained a Rule 736 Order to Foreclose on the DOT, under cause D-1-GN-24-009682, as required by TRCP 736.
22. Under TRCP 736.11, entitled "Automatic Stay and Dismissal, If Independent Suit Filed," a Rule 736 Order to foreclose is automatically stayed upon the borrower filing an independent original petition in a court of competent jurisdiction that puts in issue any matter related to the origination, servicing, or enforcement of the loan agreement, contract, or lien sought to be foreclosed prior to 5:00 p.m. on the Monday before the scheduled foreclosure sale. See Exhibit F
23. The Defendant's alleged breach of the DOT, stated above, relates to the enforcement of Defendant's equity lien. Therefore, TRCP 736 Order the loan servicer obtained under cause D-1-GN-24-009682, as required by law, the Rule 736 Order is automatically stayed.

GENERAL AFFIDAVIT CONTINUED

Cynthia Waide

Cynthia Waide
5807 Woodview Avenue
Austin, Texas 78756

State of Texas §
County of Travis §

Sworn to and subscribed before me on the 25th day of November 2025, by Cynthia Waide

Notary Public, State of Texas
My Commission Expires: September 23rd 2029

RUBY CORBETT
My Notary ID # 135529865
Expires September 23, 2029

NOTARY PUBLIC STATE OF TEXAS

Exhibit
A

ELECTRONICALLY RECORDED 2018005918
TRV 15 PGS

When recorded mail to:
Reverse Mortgage Funding LLC
3101 Technology Drive c/o Adfitech
Edmond, OK 73113

FHA Case Number: 514-1504619-962
Loan Number: 1317126959
MIN: 1012221131712695959

9/First American Title/GF# 2289800

[Space Above This Line For Recording Data]

**ADJUSTABLE RATE DEED OF TRUST**
**(Texas Home Equity Conversion)**
**THIS DEED OF TRUST SECURES A REVERSE MORTGAGE LOAN**

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THIS DEED OF TRUST ("Security Instrument") is made on **January 08, 2018**. The trustor is **CYNTHIA WAIDE, an unmarried woman** whose address is **5807 Woodview AVENUE, AUSTIN, TX 78756** ("Borrower"). The term "Borrower" does not include the Borrower's successors and assigns. The trustee is **Robert K Fowler, 10333 Richmond Avenue #860, Houston, TX 77042** ("Trustee"). *The beneficiary under this Security Instrument is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.* The lender is **Reverse Mortgage Funding LLC** which is organized and existing under the laws of **DELAWARE** and whose address is **1455 Broad Street, 2nd Floor, Bloomfield, NJ 07003** ("Lender"). Lender is the mortgagee as defined under the Texas Property Code Section 12.017. Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Mortgage Adjustable Rate Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Adjustable Rate Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, including all future advances, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal loan amount of **Eight Hundred Thirty-One Thousand and 00/100 Dollars (U.S.$831,000.00)**; (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note and Loan Agreement. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in **Travis** County, Texas:

131712695902 0233 047 0114

Legal description is attached hereto as Exhibit A and made a part hereof

which has the address of **5807 Woodview AVENUE, AUSTIN, TX78756** ("Property Address").

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property, including a manufactured housing unit. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property"; provided however, that the Property is limited to homestead property as defined as "Principal Residence" in the Loan Agreement.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of property taxes, hazard insurance premiums, flood insurance premiums, ground rents, condominium fees, planned unit development fees, homeowner's association fees, and any other special assessments that may be required by local or state law in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including but not limited to fire and flood for which Lender requires insurance. Such insurance shall be maintained in the amounts and for the periods that Lender requires, Lender has the discretion to increase or decrease the amount of any insurance required at any time provided the amount is equal to or greater than any minimum required by the Commissioner of Housing and Urban Development ("Commissioner"). Whether or not Lender imposes a flood insurance requirement, Borrower shall at a minimum insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Commissioner. If the Lender imposes insurance requirements, all insurance shall be carried with companies approved by Lender, and the insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of and in a form acceptable to Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender, instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and



Second Security Instrument held by the Commissioner on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument (as described in Paragraph 15) held by the Commissioner on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's Principal Residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's Principal Residence for the term of the Security Instrument.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a Principal Residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 14(C).

If Borrower fails to make these payments or pay the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of property taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Commissioner for the Mortgage Insurance Premium ("MIP") as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities ("Servicing Fee") as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to

protect and preserve such vacant or abandoned Property without notice to the Borrower. Any expenditures made in connection with the protection and preservation of the Property may be paid with Loan Advances, as defined in the Loan Agreement, and added to the outstanding balance to the extent the expenditures are for any of the following Borrower obligations: (a) taxes; (b) insurance; (c) costs of repairs or maintenance performed by a person or company that is not an employee of Lender or a person or company that directly or indirectly controls, is controlled by, or is under common control with Lender; (d) assessments levied against the Principal Residence; and (e) any lien that has, or may obtain, priority over Lender's lien as it is established in the Loan Documents, as defined in the Loan Agreement. Although Lender may take action under this Paragraph 6, Lender does not have to do so.

7. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be first applied to the reduction of the indebtedness under the Second Note and Second Security Instrument (as described in Paragraph 15) held by the Commissioner on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8. **Fees.** Lender may collect fees and charges authorized by the Commissioner.

9. **Non-Borrowing Spouse.** Borrower, N/A, represents that Borrower is married under the laws of **N/A ("State of Celebration")** to N/A ("Non-Borrowing Spouse"), who is not a Borrower under the terms of the "Note," "Loan Agreement" or this Security Instrument. For purposes of this Security Instrument, the status of "spouse" shall be determined by the State of Celebration if there is a conflict as to whether or not the Borrower is married between the State of Celebration and the state where the Borrower resides. **"State of Celebration"** means the state in which the marriage ceremony was performed.

**(A) Eligible Non-Borrowing Spouse**. A Non-Borrowing Spouse identified by the Borrower who meets, and continues to meet, the Qualifying Attributes requirements established by the Commissioner that the Non-Borrowing Spouse must satisfy in order to be eligible for the Deferral Period.

**(B) Ineligible Non-Borrowing Spouse**. A Non-Borrowing Spouse who does not meet the Qualifying Attributes requirements established by the Commissioner that the Non-Borrowing Spouse must satisfy in order to be eligible for the Deferral Period.

10. **Grounds for Acceleration of Debt.**

**(A) Due and Payable – Death.**

(i) Except as provided in Paragraph 10(A)(ii), Lender may require immediate payment in full of all sums secured by this Security Instrument if a Borrower dies and the Property is not the Principal Residence of at least one surviving Borrower.

(ii) Lender shall defer the Due and Payable requirement under Paragraph 10(A)(i) above for any period of time ("Deferral Period") in which a Non-Borrowing Spouse identified in Paragraph 9 qualifies as an Eligible Non-Borrowing Spouse and certifies all of the following conditions are, and continue to be, met:

a Such Eligible Non-Borrowing Spouse remained the spouse of the identified Borrower for the duration of such Borrower's lifetime;

b Such Eligible Non-Borrowing Spouse has occupied, and continues to occupy, the Property as

131712695902 0233 047 0414



[his/her] Principal Residence;

c Such Eligible Non-Borrowing Spouse has established legal ownership or other ongoing legal right to remain in the Property;

d All other obligations of the Borrower under the Note, the Loan Agreement and this Security Instrument continue to be satisfied; and

e The Note is not eligible to be called due and payable for any other reason.

This sub-paragraph (ii) is inapplicable or null and void if an Eligible Non-Borrowing Spouse is or becomes an Ineligible Non-Borrowing Spouse at any time. Further, during a deferral of the due and payable status, should any of the conditions for deferral cease to be met such a deferral shall immediately cease and the Note will become immediately due and payable in accordance with the provisions of Paragraph 7 (A)(i) of the Note.

(B) **Due and Payable - Sale.** Lender may require immediate payment in full of all sums secured by this Security Instrument if all of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple, or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or retains a life estate in the Property (or retaining a beneficial interest in a trust with such an interest in the Property). A deferral of due and payable status is not permitted when a Lender requires immediate payment in full under this paragraph.

(C) **Due and Payable with Commissioner Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Commissioner, if:

(i) The Property ceases to be the Principal Residence of a Borrower for reasons other than death and the Property is not the Principal Residence of at least one other Borrower; or

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the Principal Residence of at least one other Borrower; or

(iii) Borrower fails to maintain the priority of Lender's lien on the Property, after Lender gives notice to Borrower, by promptly discharging any lien that has priority or may obtain priority over the Lender's lien within ten (10) days after the date Borrower receives the notice. Lender shall not require immediate payment in full if Borrower: (A) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (B) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings so as to prevent the enforcement of the lien or forfeiture of any part of the Property; or (C) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by Lender's lien on the Property.

A deferral of due and payable is not permitted when a Lender requires immediate payment in full under Paragraph 10(C).

(D) **Notice and Certification to Lender.** Borrower shall complete and provide to the Lender on an annual basis a certification, in a form prescribed by the Lender, stating whether the Property remains the Borrower's Principal Residence and, if applicable, the Principal Residence of his or her Non-Borrowing Spouse. Where a Borrower has identified a Non-Borrowing Spouse in Paragraph 9 and the identified Non-Borrowing Spouse

131712695902 0233 047 0514

qualifies as an Eligible Non-Borrowing Spouse the Borrower shall also complete and provide to the Lender on an annual basis an Eligible Non-Borrowing Spouse certification, in a form prescribed by the Lender, certifying that all requirements for the application of a Deferral Period continue to apply and continue to be met. During a Deferral Period, the annual Principal Residence certification must continue to be completed and provided to the Lender by the Eligible Non-Borrowing Spouse. The Borrower shall also notify Lender whenever any of the events listed in Paragraph 10(B) and (C) occur.

(E) **Notice to Commissioner and Borrower.** Lender shall notify the Commissioner and Borrower whenever the loan becomes due and payable under Paragraph 10(B) and (C). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or ninety five percent (95%) of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(F) **Notice to Commissioner and Eligible Non-Borrowing Spouse.** Lender shall notify the Commissioner and any Eligible Non-Borrowing Spouse whenever any event listed in Paragraph 10(B) and (C) occurs during a Deferral Period.

(G) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Commissioner, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 10. A trust shall not be considered an occupant or be considered as having a Principal Residence for purposes of this Paragraph 10.

**11. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if this Security Instrument is foreclosed. If this Security Instrument is assigned to the Commissioner upon demand by the Commissioner, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**12. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**13. Deferral Period Reinstatement.** If a Deferral Period ceases or becomes unavailable because a Non-Borrowing Spouse no longer satisfies the Qualifying Attributes for a Deferral Period and has become an Ineligible Non-

Trebor Reverse Mortgage, LLC
Company - NMLS #: 1524299 - Loan Number: 1317126959

Loan Originator: Gary Lee Anderson
Loan Originator NMLS #: 382024

*Texas - 1st MERS Security Instrument (Adjustable)* *Page 6 of 14*

*Revised 09/19/2017*

131712695902 0233 047 0614

Borrowing Spouse, neither the Deferral Period nor the Security Instrument may be reinstated. In the event a Deferral Period ceases because an obligation of the Note, the Loan Agreement or this Security Instrument has not been met or the Note has become eligible to be called due and payable and is in default for a reason other than death, an Eligible Non-Borrowing Spouse may have a Deferral Period and this Security Instrument reinstated provided that the condition which resulted in the Deferral Period ceasing is corrected within thirty (30) days. A Lender may require the Eligible Non-Borrowing Spouse to pay for foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding, such costs may not be added to the Principal Balance. Upon reinstatement by an Eligible Non-Borrowing Spouse, the Deferral Period and this Security Instrument and the obligations that it secures shall remain in effect as if the Deferral Period had not ceased and the Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) the Lender has accepted a reinstatement of either the Deferral Period or this Security Instrument within the past two (2) years immediately preceding the current notification to the Eligible Non-Borrowing Spouse that the mortgage is due and payable; (ii) reinstatement of either the Deferral Period or this Security Instrument will preclude foreclosure in the future, or (iii) reinstatement of either the Deferral Period or Security Instrument will adversely affect the priority of the Security Instrument.

**14. Lien Status.**

**(A) Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 14(A). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 15(A) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

**(B) Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

**(C) Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

**15. Relationship to Second Security Instrument.**

**(A) Second Security Instrument.** In order to secure payments which the Commissioner may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the

Trebor Reverse Mortgage, LLC
Company - NMLS #: 1524299 - Loan Number: 1317126959

Loan Originator: Gary Lee Anderson
Loan Originator NMLS #: 382024

*Texas - 1st MERS Security Instrument (Adjustable)* *Page 7 of 14* *Revised 09/19/2017*

131712695902 0233 047 0714

Commissioner has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

**(B) Relationship of First and Second Security Instruments.** Payments made by the Commissioner shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Commissioner; or

(ii) The Commissioner accepts reimbursement by the Lender for all payments made by the Commissioner.

If the circumstances described in (i) or (ii) occur, then all payments by the Commissioner, including interest on the payments, but excluding late charges paid by the Commissioner, shall be included in the debt under the Note.

**(C) Effect on Borrower.** Where there is no assignment or reimbursement as described in (B)(i) or (ii) and the Commissioner makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 23 to Lender or a receiver of the Property, until the Commissioner has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Commissioner, and whether or not accrued interest has been included in the principal balance under the Note.

**(D) No Duty of the Commissioner.** The Commissioner has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 15.

**16. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of, or preclude the exercise of, any right or remedy.

**17. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. An assignment made in accordance with the regulations of the Commissioner of Housing and Urban Development shall fully relieve Lender of Lender's obligations under this Security Instrument. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Commissioner. Borrower's covenants and agreements shall be joint and several. However, any person who signs this Security Instrument, but does not execute the Note: (a) is signing this Security Instrument only to mortgage, grant and convey the person's interest in the Property under the terms of this Security Instrument and to comply with the requirements of Section 50(k)(1), Article XVI of the Texas Constitution; (b) is not obligated to pay the sums secured by this Security Instrument and is not to be considered a guarantor or surety; (c) agrees that this Security Instrument establishes a voluntary lien on the homestead and constitutes the written agreement evidencing the consent of each owner and each owner's spouse; (d) is not a Borrower for purposes of Paragraph 10 (A), (B) and (C); and (D) agrees that Lender and Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Note. Notwithstanding anything to the contrary herein, upon the death of the last-surviving Borrower, the Borrower's successors and assigns will be bound to perform Borrower's obligations under this Security Instrument.

**18. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the

Unofficial Copy

Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice to a Non-Borrowing Spouse provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower, Lender or Non-Borrowing Spouse when given as provided in this Paragraph 18.

**19. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**20. Borrower's Copy.** Borrower shall be given one conformed copy of the Note, the Loan Agreement and this Security Instrument.

**21. Third-Party Beneficiary.** Except as set forth in Paragraph 10(A)(ii) and only for an Eligible Non-Borrowing Spouse the Security Instrument does not and is not intended to confer any rights or remedies upon any person other than the parties. Borrower agrees that it is not a third-party beneficiary to the Contract of Insurance between HUD and Lender.

**22. Capitalized Terms.** Capitalized terms not defined in this Security Instrument shall have the meanings ascribed to them in the Loan Agreement.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**23. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 23.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

Trebor Reverse Mortgage, LLC
Company - NMLS #: 1524299 - Loan Number: 1317126959

Loan Originator: Gary Lee Anderson
Loan Originator NMLS #: 382024

*Texas - 1st MERS Security Instrument (Adjustable)* *Page 9 of 14* *Revised 09/19/2017*

Unofficial Copy

131712695902 0233 047 0914

**24. Foreclosure.** It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by applicable law, including, without limitation, foreclosure under a power of sale. However, if the foreclosure is for a ground other than those described in paragraph 10(A) and (B), the lien evidenced by this Security Instrument may be foreclosed only by court order. Lender shall follow any rules of civil procedure promulgated by the Texas Supreme Court related to the foreclosure of liens under Section 50(a)(7), Article XVI of the Texas Constitution, if applicable. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 24, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Lender may request Trustee to proceed with foreclosure under the power of sale. Any such request shall comply with such rules of civil procedure as they may apply. Trustee is hereby authorized and empowered, and it shall be Trustee's special duty, upon such request of Lender, to sell the Property, or any part thereof, at public auction to the highest bidder for cash, in one or more parcels and in any order Trustee determines, with or without having taken possession of the Property. Any such sale (including notice thereof) shall comply with the applicable requirements, at the time of the sale, of Section 51.002 of the Texas Property Code or, if and to the extent such statute is not then in force, with the applicable requirements, at the time of the sale, of the successor statute or statutes, if any, governing sales of Texas real property under powers of sale conferred by deeds of trust. If there is no statute in force at the time of the sale governing sales of Texas real property under powers of sale conferred by deeds of trust, such sale shall comply with applicable law, at the time of the sale, governing sales of Texas real property under powers of sale conferred by deeds of trust.

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying the Property with general warranty of title by Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Paragraph 24, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be tenants at sufferance and may be removed by writ of possession.

If the Lender's interest in this Security Instrument is held by the Commissioner and the Commissioner requires immediate payment in full under Paragraph 10, the Commissioner may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Commissioner of any rights otherwise available to a Lender under this Paragraph 24 or applicable law.

**25. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other Loan Advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any state constitution, law or regulation, except that this lien

priority shall not affect the priority of any liens for unpaid state or local governmental unit special assessments or taxes.

**26. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with applicable law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**27. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by applicable law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**28. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**29. Partial Invalidity.** It is the express intention of Lender and Borrower to structure this reverse mortgage loan to conform to the provision of the Texas Constitution applicable to reverse mortgage loans as defined by Section 50(a)(7), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Agreement, this Security Instrument or any other loan document involving this reverse mortgage is held to be invalid under applicable law, then any promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document.

In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**30. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of **Four and 857/1000's** percent (**4.857%**) which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the One-Year London Interbank Offered Rate ("LIBOR") as made available in the "Money Rates" section of the Wall Street Journal ("Index") plus a margin, rounded to three digits to the right of the decimal point.. If the Index is no longer available, Lender will be required to use any index prescribed by the Department of Housing and Urban Development. The new index will have a historical movement substantially similar to the original index, and the new index and margin will result in an annual percentage rate that is substantially similar to the rate in effect at the time the original index becomes unavailable.

Trebor Reverse Mortgage, LLC
Company - NMLS #: 1524299 - Loan Number: 1317126959

Loan Originator: Gary Lee Anderson
Loan Originator NMLS #: 382024

*Texas - 1st MERS Security Instrument (Adjustable)* *Page 11 of 14* *Revised 09/19/2017*

131712695902 0233 047 1114

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **02/01/2019 and on that day of each succeeding year**, ("Change Date") until the loan is repaid in full. "Change Date" means each date in which the interest rate could change.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index, subject to the rate limitations below, will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date.The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of the Note.

The Calculated Interest Rate will be adjusted if necessary to comply with the rate limitation(s) described above and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**31. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees, and other charges shall be obligatory.

**32. Counseling.** Borrower attests that Borrower and Borrower's Non-Borrowing Spouse as defined in Paragraph 9 have received counseling regarding the advisability and availability of reverse mortgages and other financial alternatives not earlier than 180 days before, nor later than five (5) days before the date of this Security Instrument consistent with Section 50(k)(8), Article XVI, Texas Constitution.

**33. Prohibition on the Use of Certain Devices.** Borrower shall not use a credit card, debit card, solicitation check, or similar device to obtain Advances.

**34. Prohibition on Charges on Advances.** Borrower shall not be charged, and Lender shall not charge, a transaction fee in connection with any debit or advance made to the Borrower.

**35. Unilateral Amendments.** Neither the Lender nor the holder of any outstanding lien or debt shall unilaterally amend the terms of the Loan Agreement or this Security Instrument.

**36. Loan Agreement Made Twelve Days After Provision of Mandated Disclosure.** Borrower attests that this Loan Agreement is dated at least twelve (12) days after Borrower received the "Important Notice to Borrowers Related to Your Reverse Mortgage" required by Article XVI, Section 50(k)(9) of the Texas Constitution or successor provisions as may be amended from time to time.

**37. Nominee Capacity of MERS.** MERS serves as Beneficiary of record and secured party solely as nominee, in an administrative capacity, for Lender and its successors and assigns and holds legal title to the interests granted, assigned, and transferred herein. All payments or deposits with respect to the Secured Obligations shall be made to Lender, all advances under the Loan Documents shall be made by Lender, and all consents, approvals, or other determinations required or permitted of Beneficiary herein shall be made by Lender. MERS shall at all times comply

131712695902 0233 047 1214

Unofficial Document

with the instructions of Lender and its successors and assigns. If necessary to comply with law or custom, MERS (for the benefit of Lender and its successors and assigns) may be directed by Lender to exercise any or all of those interests, including without limitation, the right to foreclose and sell the Property, and take any action required of Lender, including without limitation, a release, discharge or reconveyance of this Security Instrument. Subject to the foregoing, all references herein to "Beneficiary" shall include Lender and its successors and assigns

38. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check all riders that are applicable].

| | Condominium Rider | | PUD Rider |
|---|---|---|---|
| | Shared Appreciation Rider | | Other |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Cynthia Waide  1/8/18
**CYNTHIA WAIDE (BORROWER)**  **Date**

*[Acknowledgment on following page]*

Trebor Reverse Mortgage, LLC
Company - NMLS #: 1524299 - Loan Number: 1317126959

Loan Originator: Gary Lee Anderson
Loan Originator NMLS #: 382024

*Texas - 1st MERS Security Instrument (Adjustable)* *Page 13 of 14* *Revised 09/19/2017*

131712695902 0233 047 1314

Unofficial Document

State of TEXAS §

County of TRAVIS §

Before me, Kimberly Lowe, the undersigned authority, on this day personally appeared Cynthia Waide, known to me (or proved to me through (describe identity card or other document): TXDL) to be the person(s) whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal on **January 08, 2018.**

(Seal)

Notary Public

KIMBERLY LOWE
My Notary ID # 124330303
Expires September 10, 2018

My Commission Expires:

Trebor Reverse Mortgage, LLC
Company - NMLS #: 1524299 - Loan Number: 1317126959

Loan Originator: Gary Lee Anderson
Loan Originator NMLS #: 382024

131712695902 0233 047 1414

Unofficial Document

**EXHIBIT 'A'**

File No.: **2289800-AU21 (KM)**
Property: **5807 Woodview Avenue, Austin, TX 78756**

**LOT 165, OF ALLANDALE, SECTION 2, A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 5, PAGE 34, OF THE MAP AND/OR PLAT RECORDS OF TRAVIS COUNTY, TEXAS.**

**A.P.N. 02-3102-0616-0000**

**FILED AND RECORDED**
OFFICIAL PUBLIC RECORDS

DANA DEBEAUVOIR, COUNTY CLERK
TRAVIS COUNTY, TEXAS
January 12 2018 12:47 PM
FEE: $ 82.00 **2018005918**



Exhibit
B

# Tex. Const. Art. XVI, § 50

This document is current through the 2021 Regular Session of the 87th legislature, 2021 1st Called Session, 2021 2nd Called Session, 2021 3rd Called Session, and the 2021 & 2022 ballot propositions.

***Texas Constitution Annotated by LexisNexis® > Constitution of the State of Texas 1876 > Article XVI General Provisions***

## Sec. 50. Protection of Homestead from Forced or Unauthorized Sale; Exceptions; Requirements for Mortgage Loans and Other Obligations Secured by Homestead

**(a)** The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:

**(1)** the purchase money thereof, or a part of such purchase money;

**(2)** the taxes due thereon;

**(3)** an owelty of partition imposed against the entirety of the property by a court order or by a written agreement of the parties to the partition, including a debt of one spouse in favor of the other spouse resulting from a division or an award of a family homestead in a divorce proceeding;

**(4)** the refinance of a lien against a homestead, including a federal tax lien resulting from the tax debt of both spouses, if the homestead is a family homestead, or from the tax debt of the owner;

**(5)** work and material used in constructing new improvements thereon, if contracted for in writing, or work and material used to repair or renovate existing improvements thereon if:

**(A)** the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead;

**(B)** the contract for the work and material is not executed by the owner or the owner's spouse before the fifth day after the owner makes written application for any extension of credit for the work and material, unless the work and material are necessary to complete immediate repairs to conditions on the homestead property that materially affect the health or safety of the owner or person residing in the homestead and the owner of the homestead acknowledges such in writing;

**(C)** the contract for the work and material expressly provides that the owner may rescind the contract without penalty or charge within three days after the execution of the contract by all parties, unless the work and material are necessary to complete immediate repairs to conditions on the homestead property that materially affect the health or safety of the owner or person residing in the homestead and the owner of the homestead acknowledges such in writing; and

**(D)** the contract for the work and material is executed by the owner and the owner's spouse only at the office of a third-party lender making an extension of credit for the work and material, an attorney at law, or a title company;

**(6)** an extension of credit that:

**(A)** is secured by a voluntary lien on the homestead created under a written agreement with the consent of each owner and each owner's spouse;

**(B)** is of a principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the

homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made;

**(C)** is without recourse for personal liability against each owner and the spouse of each owner, unless the owner or spouse obtained the extension of credit by actual fraud;

**(D)** is secured by a lien that may be foreclosed upon only by a court order;

**(E)** does not require the owner or the owner's spouse to pay, in addition to any interest or any bona fide discount points used to buy down the interest rate, any fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, two percent of the original principal amount of the extension of credit, excluding fees for:

    **(i)** an appraisal performed by a third party appraiser;

    **(ii)** a property survey performed by a state registered or licensed surveyor;

    **(iii)** a state base premium for a mortgagee policy of title insurance with endorsements established in accordance with state law; or

    **(iv)** a title examination report if its cost is less than the state base premium for a mortgagee policy of title insurance without endorsements established in accordance with state law;

**(F)** is not a form of open-end account that may be debited from time to time or under which credit may be extended from time to time unless the open-end account is a home equity line of credit;

**(G)** is payable in advance without penalty or other charge;

**(H)** is not secured by any additional real or personal property other than the homestead;

**(I)** [Repealed]

**(J)** may not be accelerated because of a decrease in the market value of the homestead or because of the owner's default under other indebtedness not secured by a prior valid encumbrance against the homestead;

**(K)** is the only debt secured by the homestead at the time the extension of credit is made unless the other debt was made for a purpose described by Subsections (a)(1)—(a)(5) or Subsection (a)(8) of this section;

**(L)** is scheduled to be repaid:

    **(i)** in substantially equal successive periodic installments, not more often than every 14 days and not less often than monthly, beginning no later than two months from the date the extension of credit is made, each of which equals or exceeds the amount of accrued interest as of the date of the scheduled installment; or

    **(ii)** if the extension of credit is a home equity line of credit, in periodic payments described under Subsection (t)(8) of this section;

**(M)** is closed not before:

    **(i)** the 12th day after the later of the date that the owner of the homestead submits a loan application to the lender for the extension of credit or the date that the lender provides the owner a copy of the notice prescribed by Subsection (g) of this section;

    **(ii)** one business day after the date that the owner of the homestead receives a copy of the loan application if not previously provided and a final itemized disclosure of the actual fees, points, interest, costs, and charges that will be charged at closing. If a bona fide emergency or another good cause exists and the lender obtains the written consent of the owner, the lender may provide the documentation to the owner or the lender may modify previously provided documentation on the date of closing; and

**(iii)** the first anniversary of the closing date of any other extension of credit described by Subsection (a)(6) of this section secured by the same homestead property, except a refinance described by Paragraph (Q)(x)(f) of this subdivision, unless the owner on oath requests an earlier closing due to a state of emergency that:

**(a)** has been declared by the president of the United States or the governor as provided by law; and

**(b)** applies to the area where the homestead is located;

**(N)** is closed only at the office of the lender, an attorney at law, or a title company;

**(O)** permits a lender to contract for and receive any fixed or variable rate of interest authorized under statute;

**(P)** is made by one of the following that has not been found by a federal regulatory agency to have engaged in the practice of refusing to make loans because the applicants for the loans reside or the property proposed to secure the loans is located in a certain area:

**(i)** a bank, savings and loan association, savings bank, or credit union doing business under the laws of this state or the United States, including a subsidiary of a bank, savings and loan association, savings bank, or credit union described by this subparagraph;

**(ii)** a federally chartered lending instrumentality or a person approved as a mortgagee by the United States government to make federally insured loans;

**(iii)** a person licensed to make regulated loans, as provided by statute of this state;

**(iv)** a person who sold the homestead property to the current owner and who provided all or part of the financing for the purchase;

**(v)** a person who is related to the homestead property owner within the second degree of affinity or consanguinity; or

**(vi)** a person regulated by this state as a mortgage banker or mortgage company; and

**(Q)** is made on the condition that:

**(i)** the owner of the homestead is not required to apply the proceeds of the extension of credit to repay another debt except debt secured by the homestead or debt to another lender;

**(ii)** the owner of the homestead not assign wages as security for the extension of credit;

**(iii)** the owner of the homestead not sign any instrument in which blanks relating to substantive terms of agreement are left to be filled in;

**(iv)** the owner of the homestead not sign a confession of judgment or power of attorney to the lender or to a third person to confess judgment or to appear for the owner in a judicial proceeding;

**(v)** at the time the extension of credit is made, the owner of the homestead shall receive a copy of the final loan application and all executed documents signed by the owner at closing related to the extension of credit;

**(vi)** the security instruments securing the extension of credit contain a disclosure that the extension of credit is the type of credit defined by Subsection (a)(6) of this section;

**(vii)** within a reasonable time after termination and full payment of the extension of credit, the lender cancel and return the promissory note to the owner of the homestead and give the owner, in recordable form, a release of the lien securing the extension of credit or a copy of an endorsement and assignment of the lien to a lender that is refinancing the extension of credit;

**(viii)** the owner of the homestead and any spouse of the owner may, within three days after the extension of credit is made, rescind the extension of credit without penalty or charge;

**(ix)** the owner of the homestead and the lender sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made;

**(x)** except as provided by Subparagraph (xi) of this paragraph, the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply by:

**(a)** paying to the owner an amount equal to any overcharge paid by the owner under or related to the extension of credit if the owner has paid an amount that exceeds an amount stated in the applicable Paragraph (E), (G), or (O) of this subdivision;

**(b)** sending the owner a written acknowledgement that the lien is valid only in the amount that the extension of credit does not exceed the percentage described by Paragraph (B) of this subdivision, if applicable, or is not secured by property described under Paragraph (H) of this subdivision, if applicable;

**(c)** sending the owner a written notice modifying any other amount, percentage, term, or other provision prohibited by this section to a permitted amount, percentage, term, or other provision and adjusting the account of the borrower to ensure that the borrower is not required to pay more than an amount permitted by this section and is not subject to any other term or provision prohibited by this section;

**(d)** delivering the required documents to the borrower if the lender fails to comply with Subparagraph (v) of this paragraph or obtaining the appropriate signatures if the lender fails to comply with Subparagraph (ix) of this paragraph;

**(e)** sending the owner a written acknowledgement, if the failure to comply is prohibited by Paragraph (K) of this subdivision, that the accrual of interest and all of the owner's obligations under the extension of credit are abated while any prior lien prohibited under Paragraph (K) remains secured by the homestead; or

**(f)** if the failure to comply cannot be cured under Subparagraphs (x)(a)—(e) of this paragraph, curing the failure to comply by a refund or credit to the owner of $1,000 and offering the owner the right to refinance the extension of credit with the lender or holder for the remaining term of the loan at no cost to the owner on the same terms, including interest, as the original extension of credit with any modifications necessary to comply with this section or on terms on which the owner and the lender or holder otherwise agree that comply with this section; and

**(xi)** the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the extension of credit is made by a person other than a person described under Paragraph (P) of this subdivision or if the lien was not created under a written agreement with the consent of each owner and each owner's spouse, unless each owner and each owner's spouse who did not initially consent subsequently consents;

**(7)** a reverse mortgage; or

**(8)** the conversion and refinance of a personal property lien secured by a manufactured home to a lien on real property, including the refinance of the purchase price of the manufactured home, the cost of installing the manufactured home on the real property, and the refinance of the purchase price of the real property.

**(b)** An owner or claimant of the property claimed as homestead may not sell or abandon the homestead without the consent of each owner and the spouse of each owner, given in such manner as may be prescribed by law.

**(c)** No mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section, whether such mortgage, trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition of defeasance shall be void.

**(d)** A purchaser or lender for value without actual knowledge may conclusively rely on an affidavit that designates other property as the homestead of the affiant and that states that the property to be conveyed or encumbered is not the homestead of the affiant.

**(e)** A refinance of debt secured by a homestead and described by any subsection under Subsections (a)(1)—(a)(5) that includes the advance of additional funds may not be secured by a valid lien against the homestead unless:

**(1)** the refinance of the debt is an extension of credit described by Subsection (a)(6) of this section; or

**(2)** the advance of all the additional funds is for reasonable costs necessary to refinance such debt or for a purpose described by Subsection (a)(2), (a)(3), or (a)(5) of this section.

**(f)** A refinance of debt secured by the homestead, any portion of which is an extension of credit described by Subsection (a)(6) of this section, may not be secured by a valid lien against the homestead unless either:

**(1)** the refinance of the debt is an extension of credit described by Subsection (a)(6) or (a)(7) of this section; or

**(2)** all of the following conditions are met:

**(A)** the refinance is not closed before the first anniversary of the date the extension of credit was closed;

**(B)** the refinanced extension of credit does not include the advance of any additional funds other than:

**(i)** funds advanced to refinance a debt described by Subsections (a)(1) through (a)(7) of this section; or

**(ii)** actual costs and reserves required by the lender to refinance the debt;

**(C)** the refinance of the extension of credit is of a principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the refinance of the extension of credit is made; and

**(D)** the lender provides the owner the following written notice on a separate document not later than the third business day after the date the owner submits the loan application to the lender and at least 12 days before the date the refinance of the extension of credit is closed:

"YOUR EXISTING LOAN THAT YOU DESIRE TO REFINANCE IS A HOME EQUITY LOAN. YOU MAY HAVE THE OPTION TO REFINANCE YOUR HOME EQUITY LOAN AS EITHER A HOME EQUITY LOAN OR AS A NON-HOME EQUITY LOAN, IF OFFERED BY YOUR LENDER.

"HOME EQUITY LOANS HAVE IMPORTANT CONSUMER PROTECTIONS. A LENDER MAY ONLY FORECLOSE A HOME EQUITY LOAN BASED ON A COURT ORDER. A HOME EQUITY LOAN MUST BE WITHOUT RECOURSE FOR PERSONAL LIABILITY AGAINST YOU AND YOUR SPOUSE.

"IF YOU HAVE APPLIED TO REFINANCE YOUR EXISTING HOME EQUITY LOAN AS A NON-HOME EQUITY LOAN, YOU WILL LOSE CERTAIN CONSUMER PROTECTIONS. A NON-HOME EQUITY REFINANCED LOAN:

"**(1)** WILL PERMIT THE LENDER TO FORECLOSE WITHOUT A COURT ORDER;

**"(2)** WILL BE WITH RECOURSE FOR PERSONAL LIABILITY AGAINST YOU AND YOUR SPOUSE; AND

**"(3)** MAY ALSO CONTAIN OTHER TERMS OR CONDITIONS THAT MAY NOT BE PERMITTED IN A TRADITIONAL HOME EQUITY LOAN.

"BEFORE YOU REFINANCE YOUR EXISTING HOME EQUITY LOAN TO MAKE IT A NON-HOME EQUITY LOAN, YOU SHOULD MAKE SURE YOU UNDERSTAND THAT YOU ARE WAIVING IMPORTANT PROTECTIONS THAT HOME EQUITY LOANS PROVIDE UNDER THE LAW AND SHOULD CONSIDER CONSULTING WITH AN ATTORNEY OF YOUR CHOOSING REGARDING THESE PROTECTIONS.

"YOU MAY WISH TO ASK YOUR LENDER TO REFINANCE YOUR LOAN AS A HOME EQUITY LOAN. HOWEVER, A HOME EQUITY LOAN MAY HAVE A HIGHER INTEREST RATE AND CLOSING COSTS THAN A NON-HOME EQUITY LOAN."

**(f-1)**A lien securing a refinance of debt under Subsection (f)(2) of this section is deemed to be a lien described by Subsection (a)(4) of this section. An affidavit executed by the owner or the owner 's spouse acknowledging that the requirements of Subsection (f)(2) of this section have been met conclusively establishes that the requirements of Subsection (a)(4) of this section have been met.

**(g)** An extension of credit described by Subsection (a)(6) of this section may be secured by a valid lien against homestead property if the extension of credit is not closed before the 12th day after the lender provides the owner with the following written notice on a separate instrument:

"NOTICE CONCERNING EXTENSIONS OF CREDIT DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION:

*SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION*ALLOWS CERTAIN LOANS TO BE SECURED AGAINST THE EQUITY IN YOUR HOME. SUCH LOANS ARE COMMONLY KNOWN AS EQUITY LOANS. IF YOU DO NOT REPAY THE LOAN OR IF YOU FAIL TO MEET THE TERMS OF THE LOAN, THE LENDER MAY FORECLOSE AND SELL YOUR HOME. THE CONSTITUTION PROVIDES THAT:

**"(A)** THE LOAN MUST BE VOLUNTARILY CREATED WITH THE CONSENT OF EACH OWNER OF YOUR HOME AND EACH OWNER'S SPOUSE;

**"(B)** THE PRINCIPAL LOAN AMOUNT AT THE TIME THE LOAN IS MADE MUST NOT EXCEED AN AMOUNT THAT, WHEN ADDED TO THE PRINCIPAL BALANCES OF ALL OTHER LIENS AGAINST YOUR HOME, IS MORE THAN 80 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME;

**"(C)** THE LOAN MUST BE WITHOUT RECOURSE FOR PERSONAL LIABILITY AGAINST YOU AND YOUR SPOUSE UNLESS YOU OR YOUR SPOUSE OBTAINED THIS EXTENSION OF CREDIT BY ACTUAL FRAUD;

**"(D)** THE LIEN SECURING THE LOAN MAY BE FORECLOSED UPON ONLY WITH A COURT ORDER;

**"(E)** FEES AND CHARGES TO MAKE THE LOAN MAY NOT EXCEED 2 PERCENT OF THE LOAN AMOUNT, EXCEPT FOR A FEE OR CHARGE FOR AN APPRAISAL PERFORMED BY A THIRD PARTY APPRAISER, A PROPERTY SURVEY PERFORMED BY A STATE REGISTERED OR LICENSED SURVEYOR, A STATE BASE PREMIUM FOR A MORTGAGEE POLICY OF TITLE INSURANCE WITH ENDORSEMENTS, OR A TITLE EXAMINATION REPORT;

**"(F)** THE LOAN MAY NOT BE AN OPEN-END ACCOUNT THAT MAY BE DEBITED FROM TIME TO TIME OR UNDER WHICH CREDIT MAY BE EXTENDED FROM TIME TO TIME UNLESS IT IS A HOME EQUITY LINE OF CREDIT;

"**(G)** YOU MAY PREPAY THE LOAN WITHOUT PENALTY OR CHARGE;

"**(H)** NO ADDITIONAL COLLATERAL MAY BE SECURITY FOR THE LOAN;

"**(I)** [Repealed]

"**(J)** YOU ARE NOT REQUIRED TO REPAY THE LOAN EARLIER THAN AGREED SOLELY BECAUSE THE FAIR MARKET VALUE OF YOUR HOME DECREASES OR BECAUSE YOU DEFAULT ON ANOTHER LOAN THAT IS NOT SECURED BY YOUR HOME;

"**(K)** ONLY ONE LOAN DESCRIBED BY *SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION* MAY BE SECURED WITH YOUR HOME AT ANY GIVEN TIME;

"**(L)** THE LOAN MUST BE SCHEDULED TO BE REPAID IN PAYMENTS THAT EQUAL OR EXCEED THE AMOUNT OF ACCRUED INTEREST FOR EACH PAYMENT PERIOD;

"**(M)** THE LOAN MAY NOT CLOSE BEFORE 12 DAYS AFTER YOU SUBMIT A LOAN APPLICATION TO THE LENDER OR BEFORE 12 DAYS AFTER YOU RECEIVE THIS NOTICE, WHICHEVER DATE IS LATER; AND MAY NOT WITHOUT YOUR CONSENT CLOSE BEFORE ONE BUSINESS DAY AFTER THE DATE ON WHICH YOU RECEIVE A COPY OF YOUR LOAN APPLICATION IF NOT PREVIOUSLY PROVIDED AND A FINAL ITEMIZED DISCLOSURE OF THE ACTUAL FEES, POINTS, INTEREST, COSTS, AND CHARGES THAT WILL BE CHARGED AT CLOSING; AND IF YOUR HOME WAS SECURITY FOR THE SAME TYPE OF LOAN WITHIN THE PAST YEAR, A NEW LOAN SECURED BY THE SAME PROPERTY MAY NOT CLOSE BEFORE ONE YEAR HAS PASSED FROM THE CLOSING DATE OF THE OTHER LOAN, UNLESS ON OATH YOU REQUEST AN EARLIER CLOSING DUE TO A DECLARED STATE OF EMERGENCY;

"**(N)** THE LOAN MAY CLOSE ONLY AT THE OFFICE OF THE LENDER, TITLE COMPANY, OR AN ATTORNEY AT LAW;

"**(O)** THE LENDER MAY CHARGE ANY FIXED OR VARIABLE RATE OF INTEREST AUTHORIZED BY STATUTE;

"**(P)** ONLY A LAWFULLY AUTHORIZED LENDER MAY MAKE LOANS DESCRIBED BY *SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION*;

"**(Q)** LOANS DESCRIBED BY *SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION* MUST:

"**(1)** NOT REQUIRE YOU TO APPLY THE PROCEEDS TO ANOTHER DEBT EXCEPT A DEBT THAT IS SECURED BY YOUR HOME OR OWED TO ANOTHER LENDER;

"**(2)** NOT REQUIRE THAT YOU ASSIGN WAGES AS SECURITY;

"**(3)** NOT REQUIRE THAT YOU EXECUTE INSTRUMENTS WHICH HAVE BLANKS FOR SUBSTANTIVE TERMS OF AGREEMENT LEFT TO BE FILLED IN;

"**(4)** NOT REQUIRE THAT YOU SIGN A CONFESSION OF JUDGMENT OR POWER OF ATTORNEY TO ANOTHER PERSON TO CONFESS JUDGMENT OR APPEAR IN A LEGAL PROCEEDING ON YOUR BEHALF;

"**(5)** PROVIDE THAT YOU RECEIVE A COPY OF YOUR FINAL LOAN APPLICATION AND ALL EXECUTED DOCUMENTS YOU SIGN AT CLOSING;

"**(6)** PROVIDE THAT THE SECURITY INSTRUMENTS CONTAIN A DISCLOSURE THAT THIS LOAN IS A LOAN DEFINED BY *SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION;*

"**(7)** PROVIDE THAT WHEN THE LOAN IS PAID IN FULL, THE LENDER WILL SIGN AND GIVE YOU A RELEASE OF LIEN OR AN ASSIGNMENT OF THE LIEN, WHICHEVER IS APPROPRIATE;

"**(8)** PROVIDE THAT YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THE LOAN WITHOUT PENALTY OR CHARGE;

"**(9)** PROVIDE THAT YOU AND THE LENDER ACKNOWLEDGE THE FAIR MARKET VALUE OF YOUR HOME ON THE DATE THE LOAN CLOSES; AND

"**(10)** PROVIDE THAT THE LENDER WILL FORFEIT ALL PRINCIPAL AND INTEREST IF THE LENDER FAILS TO COMPLY WITH THE LENDER'S OBLIGATIONS UNLESS THE LENDER CURES THE FAILURE TO COMPLY AS PROVIDED BY *SECTION 50(a)(6)(Q)(x), ARTICLE XVI, OF THE TEXAS CONSTITUTION*; AND

"**(R)** IF THE LOAN IS A HOME EQUITY LINE OF CREDIT:

"**(1)** YOU MAY REQUEST ADVANCES, REPAY MONEY, AND REBORROW MONEY UNDER THE LINE OF CREDIT;

"**(2)** EACH ADVANCE UNDER THE LINE OF CREDIT MUST BE IN AN AMOUNT OF AT LEAST $4,000;

"**(3)** YOU MAY NOT USE A CREDIT CARD, DEBIT CARD, OR SIMILAR DEVICE, OR PREPRINTED CHECK THAT YOU DID NOT SOLICIT, TO OBTAIN ADVANCES UNDER THE LINE OF CREDIT;

"**(4)** ANY FEES THE LENDER CHARGES MAY BE CHARGED AND COLLECTED ONLY AT THE TIME THE LINE OF CREDIT IS ESTABLISHED AND THE LENDER MAY NOT CHARGE A FEE IN CONNECTION WITH ANY ADVANCE;

"**(5)** THE MAXIMUM PRINCIPAL AMOUNT THAT MAY BE EXTENDED, WHEN ADDED TO ALL OTHER DEBTS SECURED BY YOUR HOME, MAY NOT EXCEED 80 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME ON THE DATE THE LINE OF CREDIT IS ESTABLISHED;

"**(6)** IF THE PRINCIPAL BALANCE UNDER THE LINE OF CREDIT AT ANY TIME EXCEEDS 80 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME, AS DETERMINED ON THE DATE THE LINE OF CREDIT IS ESTABLISHED, YOU MAY NOT CONTINUE TO REQUEST ADVANCES UNDER THE LINE OF CREDIT UNTIL THE BALANCE IS LESS THAN 80 PERCENT OF THE FAIR MARKET VALUE; AND

"**(7)** THE LENDER MAY NOT UNILATERALLY AMEND THE TERMS OF THE LINE OF CREDIT.

"THIS NOTICE IS ONLY A SUMMARY OF YOUR RIGHTS UNDER THE TEXAS CONSTITUTION. YOUR RIGHTS ARE GOVERNED BY *SECTION 50, ARTICLE XVI, OF THE TEXAS CONSTITUTION*, AND NOT BY THIS NOTICE."

If the discussions with the borrower are conducted primarily in a language other than English, the lender shall, before closing, provide an additional copy of the notice translated into the written language in which the discussions were conducted.

**(h)** A lender or assignee for value may conclusively rely on the written acknowledgment as to the fair market value of the homestead property made in accordance with Subsection (a)(6)(Q)(ix) of this section if:

**(1)** the value acknowledged to is the value estimate in an appraisal or evaluation prepared in accordance with a state or federal requirement applicable to an extension of credit under Subsection (a)(6); and

**(2)** the lender or assignee does not have actual knowledge at the time of the payment of value or advance of funds by the lender or assignee that the fair market value stated in the written acknowledgment was incorrect.

**(i)** This subsection shall not affect or impair any right of the borrower to recover damages from the lender or assignee under applicable law for wrongful foreclosure. A purchaser for value without actual knowledge

may conclusively presume that a lien securing an extension of credit described by Subsection (a)(6) of this section was a valid lien securing the extension of credit with homestead property if:

**(1)** the security instruments securing the extension of credit contain a disclosure that the extension of credit secured by the lien was the type of credit defined by *Section 50(a)(6), Article XVI, Texas Constitution*;

**(2)** the purchaser acquires the title to the property pursuant to or after the foreclosure of the voluntary lien; and

**(3)** the purchaser is not the lender or assignee under the extension of credit.

**(j)** Subsection (a)(6) and Subsections (e)—(i) of this section are not severable, and none of those provisions would have been enacted without the others. If any of those provisions are held to be preempted by the laws of the United States, all of those provisions are invalid. This subsection shall not apply to any lien or extension of credit made after January 1, 1998, and before the date any provision under Subsection (a)(6) or Subsections (e)—(i) is held to be preempted.

**(k)** "Reverse mortgage" means an extension of credit:

**(1)** that is secured by a voluntary lien on homestead property created by a written agreement with the consent of each owner and each owner's spouse;

**(2)** that is made to a person who is or whose spouse is 62 years or older;

**(3)** that is made without recourse for personal liability against each owner and the spouse of each owner;

**(4)** under which advances are provided to a borrower:

**(A)** based on the equity in a borrower's homestead; or

**(B)** for the purchase of homestead property that the borrower will occupy as a principal residence;

**(5)** that does not permit the lender to reduce the amount or number of advances because of an adjustment in the interest rate if periodic advances are to be made;

**(6)** that requires no payment of principal or interest until:

**(A)** all borrowers have died;

**(B)** the homestead property securing the loan is sold or otherwise transferred;

**(C)** all borrowers cease occupying the homestead property for a period of longer than 12 consecutive months without prior written approval from the lender;

**(C-1)** if the extension of credit is used for the purchase of homestead property, the borrower fails to timely occupy the homestead property as the borrower's principal residence within a specified period after the date the extension of credit is made that is stipulated in the written agreement creating the lien on the property; or

**(D)** the borrower:

**(i)** defaults on an obligation specified in the loan documents to repair and maintain, pay taxes and assessments on, or insure the homestead property;

**(ii)** commits actual fraud in connection with the loan; or

**(iii)** fails to maintain the priority of the lender's lien on the homestead property, after the lender gives notice to the borrower, by promptly discharging any lien that has priority or may obtain priority over the lender's lien within 10 days after the date the borrower receives the notice, unless the borrower:

**(a)** agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to the lender;

**(b)** contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings so as to prevent the enforcement of the lien or forfeiture of any part of the homestead property; or

**(c)** secures from the holder of the lien an agreement satisfactory to the lender subordinating the lien to all amounts secured by the lender's lien on the homestead property;

**(7)** that provides that if the lender fails to make loan advances as required in the loan documents and if the lender fails to cure the default as required in the loan documents after notice from the borrower, the lender forfeits all principal and interest of the reverse mortgage, provided, however, that this subdivision does not apply when a governmental agency or instrumentality takes an assignment of the loan in order to cure the default;

**(8)** that is not made unless the prospective borrower and the spouse of the prospective borrower attest in writing that the prospective borrower and the prospective borrower's spouse received counseling regarding the advisability and availability of reverse mortgages and other financial alternatives that was completed not earlier than the 180th day nor later than the 5th day before the date the extension of credit is closed;

**(9)** that is not closed before the 12th day after the date the lender provides to the prospective borrower the following written notice on a separate instrument, which the lender or originator and the borrower must sign for the notice to take effect:

"IMPORTANT NOTICE TO BORROWERS RELATED TO YOUR REVERSE MORTGAGE

"UNDER THE TEXAS TAX CODE, CERTAIN ELDERLY PERSONS MAY DEFER THE COLLECTION OF PROPERTY TAXES ON THEIR RESIDENCE HOMESTEAD. BY RECEIVING THIS REVERSE MORTGAGE YOU MAY BE REQUIRED TO FORGO ANY PREVIOUSLY APPROVED DEFERRAL OF PROPERTY TAX COLLECTION AND YOU MAY BE REQUIRED TO PAY PROPERTY TAXES ON AN ANNUAL BASIS ON THIS PROPERTY.

"THE LENDER MAY FORECLOSE THE REVERSE MORTGAGE AND YOU MAY LOSE YOUR HOME IF:

"**(A)** YOU DO NOT PAY THE TAXES OR OTHER ASSESSMENTS ON THE HOME EVEN IF YOU ARE ELIGIBLE TO DEFER PAYMENT OF PROPERTY TAXES;

"**(B)** YOU DO NOT MAINTAIN AND PAY FOR PROPERTY INSURANCE ON THE HOME AS REQUIRED BY THE LOAN DOCUMENTS;

"**(C)** YOU FAIL TO MAINTAIN THE HOME IN A STATE OF GOOD CONDITION AND REPAIR;

"**(D)** YOU CEASE OCCUPYING THE HOME FOR A PERIOD LONGER THAN 12 CONSECUTIVE MONTHS WITHOUT THE PRIOR WRITTEN APPROVAL FROM THE LENDER OR, IF THE EXTENSION OF CREDIT IS USED FOR THE PURCHASE OF THE HOME, YOU FAIL TO TIMELY OCCUPY THE HOME AS YOUR PRINCIPAL RESIDENCE WITHIN A PERIOD OF TIME AFTER THE EXTENSION OF CREDIT IS MADE THAT IS STIPULATED IN THE WRITTEN AGREEMENT CREATING THE LIEN ON THE HOME;

"**(E)** YOU SELL THE HOME OR OTHERWISE TRANSFER THE HOME WITHOUT PAYING OFF THE LOAN;

"**(F)** ALL BORROWERS HAVE DIED AND THE LOAN IS NOT REPAID;

"**(G)** YOU COMMIT ACTUAL FRAUD IN CONNECTION WITH THE LOAN; OR

"**(H)** YOU FAIL TO MAINTAIN THE PRIORITY OF THE LENDER'S LIEN ON THE HOME, AFTER THE LENDER GIVES NOTICE TO YOU, BY PROMPTLY DISCHARGING ANY LIEN

THAT HAS PRIORITY OR MAY OBTAIN PRIORITY OVER THE LENDER'S LIEN WITHIN 10 DAYS AFTER THE DATE YOU RECEIVE THE NOTICE, UNLESS YOU:

"**(1)** AGREE IN WRITING TO THE PAYMENT OF THE OBLIGATION SECURED BY THE LIEN IN A MANNER ACCEPTABLE TO THE LENDER;

"**(2)** CONTEST IN GOOD FAITH THE LIEN BY, OR DEFEND AGAINST ENFORCEMENT OF THE LIEN IN, LEGAL PROCEEDINGS SO AS TO PREVENT THE ENFORCEMENT OF THE LIEN OR FORFEITURE OF ANY PART OF THE HOME; OR

"**(3)** SECURE FROM THE HOLDER OF THE LIEN AN AGREEMENT SATISFACTORY TO THE LENDER SUBORDINATING THE LIEN TO ALL AMOUNTS SECURED BY THE LENDER'S LIEN ON THE HOME.

"IF A GROUND FOR FORECLOSURE EXISTS, THE LENDER MAY NOT COMMENCE FORECLOSURE UNTIL THE LENDER GIVES YOU WRITTEN NOTICE BY MAIL THAT A GROUND FOR FORECLOSURE EXISTS AND GIVES YOU AN OPPORTUNITY TO REMEDY THE CONDITION CREATING THE GROUND FOR FORECLOSURE OR TO PAY THE REVERSE MORTGAGE DEBT WITHIN THE TIME PERMITTED BY *SECTION 50(k)(10), ARTICLE XVI, OF THE TEXAS CONSTITUTION.* THE LENDER MUST OBTAIN A COURT ORDER FOR FORECLOSURE EXCEPT THAT A COURT ORDER IS NOT REQUIRED IF THE FORECLOSURE OCCURS BECAUSE:

"**(1)** ALL BORROWERS HAVE DIED; OR

"**(2)** THE HOMESTEAD PROPERTY SECURING THE LOAN IS SOLD OR OTHERWISE TRANSFERRED."

"YOU SHOULD CONSULT WITH YOUR HOME COUNSELOR OR AN ATTORNEY IF YOU HAVE ANY CONCERNS ABOUT THESE OBLIGATIONS BEFORE YOU CLOSE YOUR REVERSE MORTGAGE LOAN. TO LOCATE AN ATTORNEY IN YOUR AREA, YOU MAY WISH TO CONTACT THE STATE BAR OF TEXAS."

"THIS NOTICE IS ONLY A SUMMARY OF YOUR RIGHTS UNDER THE TEXAS CONSTITUTION. YOUR RIGHTS ARE GOVERNED IN PART BY *SECTION 50, ARTICLE XVI, OF THE TEXAS CONSTITUTION*, AND NOT BY THIS NOTICE."

**(10)** that does not permit the lender to commence foreclosure until the lender gives notice to the borrower, in the manner provided for a notice by mail related to the foreclosure of liens under Subsection (a)(6) of this section, that a ground for foreclosure exists and gives the borrower at least 30 days, or at least 20 days in the event of a default under Subdivision (6)(D)(iii) of this subsection, to:

**(A)** remedy the condition creating the ground for foreclosure;

**(B)** pay the debt secured by the homestead property from proceeds of the sale of the homestead property by the borrower or from any other sources; or

**(C)** convey the homestead property to the lender by a deed in lieu of foreclosure; and

**(11)** that is secured by a lien that may be foreclosed upon only by a court order, if the foreclosure is for a ground other than a ground stated by Subdivision (6)(A) or (B) of this subsection.

**(l)** Advances made under a reverse mortgage and interest on those advances have priority over a lien filed for record in the real property records in the county where the homestead property is located after the reverse mortgage is filed for record in the real property records of that county.

**(m)** A reverse mortgage may provide for an interest rate that is fixed or adjustable and may also provide for interest that is contingent on appreciation in the fair market value of the homestead property. Although payment of principal or interest shall not be required under a reverse mortgage until the entire loan becomes due and payable, interest may accrue and be compounded during the term of the loan as provided by the reverse mortgage loan agreement.

**(n)** A reverse mortgage that is secured by a valid lien against homestead property may be made or acquired without regard to the following provisions of any other law of this state:

**(1)** a limitation on the purpose and use of future advances or other mortgage proceeds;

**(2)** a limitation on future advances to a term of years or a limitation on the term of open-end account advances;

**(3)** a limitation on the term during which future advances take priority over intervening advances;

**(4)** a requirement that a maximum loan amount be stated in the reverse mortgage loan documents;

**(5)** a prohibition on balloon payments;

**(6)** a prohibition on compound interest and interest on interest;

**(7)** a prohibition on contracting for, charging, or receiving any rate of interest authorized by any law of this state authorizing a lender to contract for a rate of interest; and

**(8)** a requirement that a percentage of the reverse mortgage proceeds be advanced before the assignment of the reverse mortgage.

**(o)** For the purposes of determining eligibility under any statute relating to payments, allowances, benefits, or services provided on a means-tested basis by this state, including supplemental security income, low-income energy assistance, property tax relief, medical assistance, and general assistance:

**(1)** reverse mortgage loan advances made to a borrower are considered proceeds from a loan and not income; and

**(2)** undisbursed funds under a reverse mortgage loan are considered equity in a borrower's home and not proceeds from a loan.

**(p)** The advances made on a reverse mortgage loan under which more than one advance is made must be made according to the terms established by the loan documents by one or more of the following methods:

**(1)** an initial advance at any time and future advances at regular intervals;

**(2)** an initial advance at any time and future advances at regular intervals in which the amounts advanced may be reduced, for one or more advances, at the request of the borrower;

**(3)** an initial advance at any time and future advances at times and in amounts requested by the borrower until the credit limit established by the loan documents is reached;

**(4)** an initial advance at any time, future advances at times and in amounts requested by the borrower until the credit limit established by the loan documents is reached, and subsequent advances at times and in amounts requested by the borrower according to the terms established by the loan documents to the extent that the outstanding balance is repaid; or

**(5)** at any time by the lender, on behalf of the borrower, if the borrower fails to timely pay any of the following that the borrower is obligated to pay under the loan documents to the extent necessary to protect the lender's interest in or the value of the homestead property:

**(A)** taxes;

**(B)** insurance;

**(C)** costs of repairs or maintenance performed by a person or company that is not an employee of the lender or a person or company that directly or indirectly controls, is controlled by, or is under common control with the lender;

**(D)** assessments levied against the homestead property; and

**(E)** any lien that has, or may obtain, priority over the lender's lien as it is established in the loan documents.

**(q)** To the extent that any statutes of this state, including without limitation, *Section 41.001 of the Texas Property Code*, purport to limit encumbrances that may properly be fixed on homestead property in a manner that does not permit encumbrances for extensions of credit described in Subsection (a)(6) or (a)(7) of this section, the same shall be superseded to the extent that such encumbrances shall be permitted to be fixed upon homestead property in the manner provided for by this amendment.

**(r)** The supreme court shall promulgate rules of civil procedure for expedited foreclosure proceedings related to the foreclosure of liens under Subsection (a)(6) of this section and to foreclosure of a reverse mortgage lien that requires a court order.

**(s)** The Finance Commission of Texas shall appoint a director to conduct research on the availability, quality, and prices of financial services and research the practices of business entities in the state that provide financial services under this section. The director shall collect information and produce reports on lending activity of those making loans under this section. The director shall report his or her findings to the legislature not later than December 1 of each year.

**(t)** A home equity line of credit is a form of an open-end account that may be debited from time to time, under which credit may be extended from time to time and under which:

**(1)** the owner requests advances, repays money, and reborrows money;

**(2)** any single debit or advance is not less than $4,000;

**(3)** the owner does not use a credit card, debit card, or similar device, or preprinted check unsolicited by the borrower, to obtain an advance;

**(4)** any fees described by Subsection (a)(6)(E) of this section are charged and collected only at the time the extension of credit is established and no fee is charged or collected in connection with any debit or advance;

**(5)** the maximum principal amount that may be extended under the account, when added to the aggregate total of the outstanding principal balances of all indebtedness secured by the homestead on the date the extension of credit is established, does not exceed an amount described under Subsection (a)(6)(B) of this section;

**(6)** [Repealed]

**(7)** the lender or holder may not unilaterally amend the extension of credit; and

**(8)** repayment is to be made in regular periodic installments, not more often than every 14 days and not less often than monthly, beginning not later than two months from the date the extension of credit is established, and:

**(A)** during the period during which the owner may request advances, each installment equals or exceeds the amount of accrued interest; and

**(B)** after the period during which the owner may request advances, installments are substantially equal.

**(u)** The legislature may by statute delegate one or more state agencies the power to interpret Subsections (a)(5)—(a)(7), (e)—(p), and (t), of this section. An act or omission does not violate a provision included in those subsections if the act or omission conforms to an interpretation of the provision that is:

**(1)** in effect at the time of the act or omission; and

**(2)** made by a state agency to which the power of interpretation is delegated as provided by this subsection or by an appellate court of this state or the United States.

**(v)** A reverse mortgage must provide that:

**(1)** the owner does not use a credit card, debit card, preprinted solicitation check, or similar device to obtain an advance;

**(2)** after the time the extension of credit is established, no transaction fee is charged or collected solely in connection with any debit or advance; and

**(3)** the lender or holder may not unilaterally amend the extension of credit.

## History

**HISTORY:**

Amendment proposed by Acts 1995, 74th Leg., S.J.R. No. 46, approved by electorate (Prop. 4) at the November 7, 1995 election; amendment proposed by Acts 1997, 75th Leg., H.J.R. No. 31, approved by electorate at the November 4, 1997 election; amendment proposed by Acts 1999, 76th Leg., S.J.R. No. 12, approved by electorate (Prop. 2) at the November 2, 1999 constitutional amendment election; amendment proposed by Acts 2001, 77th Leg., H.J.R. No. 75, approved by electorate at the November 6, 2001 general election; amendment proposed by Acts 2003, 78th Leg., H.J.R. No. 23 and S.J.R. No. 42, approved by electorate at the September 13, 2003 election; amendment proposed by Acts 2005, 79th Leg., S.J.R. No. 7, approved by the electorate (Prop. 7) at the November 8, 2005 election; amendment proposed by Acts 2007, 80th Leg., H.J.R. No. 72, approved by the electorate (Prop. 8) at the November 6, 2007 election; amendment proposed by Acts 2013, 83rd Leg., S.J.R. No. 18, approved by the electorate (Prop. 5) at the November 5, 2013 election; amendment proposed by Acts 2017, 85th Leg., S.J.R. No. 60 (Prop. 2), approved by electorate at the November 7, 2017 election.

Annotations

## Notes

**STATUTORY NOTES**

**Editor's Notes**

Acts 2017, 85th Leg., S.J.R. No. 60, § 2, provides: "The following temporary provision is added to the Texas Constitution:

TEMPORARY PROVISION. (a) This temporary provision applies to the constitutional amendment proposed by the 85th Legislature, Regular Session, 2017, to establish a lower amount for expenses that can be charged to a borrower and removing certain financing expense limitations for a home equity loan, establishing certain authorized lenders to make a home equity loan, changing certain options for the refinancing of home equity loans, changing the threshold for an advance of a home equity line of credit, and allowing home equity loans on agricultural homesteads.

(b) The constitutional amendment takes effect January 1, 2018.

(c) The changes in law made by the constitutional amendment apply only to a home equity loan made on or after the effective date of the constitutional amendment and to an existing home equity loan that is refinanced on or after the effective date of the constitutional amendment.

(d) This temporary provision takes effect on the adoption of the constitutional amendment by the voters and expires January 1, 2019."

Acts 2017, 85th Leg., S.J.R. No. 60, § 3, provides: "This proposed constitutional amendment shall be submitted to the voters at an election to be held November 7, 2017. The ballot shall be printed to provide for voting for or against the proposition: 'The constitutional amendment to establish a lower amount for expenses that can be charged to a borrower and removing certain financing expense limitations for a home equity loan, establishing certain authorized lenders to make a home equity loan, changing certain options for the refinancing of home equity loans, changing



Reverse Mortgage Servicing
ACH (AV)
Amount (USD)
- $48,348.19
Settled
Status Timeline
Payment initiated on Jul 3, 2025
Payment settled on Jul 3, 2025
Transfer details
Date
Jul 3, 2025
Receipt
Add receipt
Description
Example: Team event catering
0/255 Characters
Balance
$651.81
To
Account Number
6877864216
Routing Number
021000089
Initiated by
Angie Vandommele
From Account
5807 Woodview
From
To
Initiator
Print
Exhibit
C
exhibitindexes.com #581

Memo (Internal note)

**Loan# 1347093 / Name: Cynthia Waide / Address: 580**

Fees

**$5.00**

Trace number

**064209589252446**

Transaction ID

**307734625**

Print

Exhibit D

exhibitindexes.com #581

Relay

# 5807 Woodview

Account Statement

Jul 1 - Jul 31, 2025

3736 Bee Cave Road Ste 151
Austin TX 78746

Owners: Angie Vandommele, Sebastien Charbonneaux

## SUMMARY

| Name | Date | Status | Amount | Balance |
| --- | --- | --- | --- | --- |
| Angie Vandommele<br>Other | Jul 22, 2025 | Returned | +$48,308.19 | $48,895.82 |
| Relay<br>Banking Fees | Jul 22, 2025 | Settled | -$8.00 | $837.63 |
| Reverse Mortgage Servicing<br>Domestic Wire (AV) | Jul 22, 2025 | Settled | -$48,348.19 | $845.63 |

| Name | Date | Status | Amount | Balance |
|---|---|---|---|---|
| HOME DEPOT<br>ACH | Jul 3, 2025 | Settled | +$0.06 | $24,000.06 |
| Jesus Martinez (3912)<br>ACH (AV) | Jul 2, 2025 | Settled | -$1,000.00 | $24,000.00 |
| JPMorgan Chase<br>ACH | Jul 2, 2025 | Settled | +$25,000.00 | $25,000.00 |

Exhibit E

# Tex. R. Civ. P. 735.1

The State and Federal rules are current through January 25, 2024. Local District rules are updated periodically throughout the year.

***TX - Texas Local, State & Federal Court Rules > TEXAS RULES OF CIVIL PROCEDURE > PART VII. RULES RELATING TO SPECIAL PROCEEDINGS > SECTION 1. Procedures Related to Foreclosures of Certain Liens > RULE 735. Foreclosures Requiring a Court Order***

## Rule 735.1. Liens Affected.

Rule 736 provides the procedure for obtaining a court order, when required, to allow foreclosure of a lien containing a power of sale in the security instrument, dedicatory instrument, or declaration creating the lien, including a lien securing any of the following:

**(a)** a home equity loan, reverse mortgage, or home equity line of credit under article XVI, sections 50(a)(6), 50(k), and 50(t) of the Texas Constitution;

**(b)** a tax lien transfer or property tax loan under *sections 32.06 and 32.065 of the Tax Code*; or

**(c)** a property owners' association assessment under *section 209.0092 of the Property Code*.

## History

Amended by Texas Supreme Court, Misc. Docket Nos. 11-9256 and 11-9260, effective January 1, 2012.

Annotations

## Notes

**Editor's Notes.**

For archived documents prior to 2020, please see *Tex. R. Civ. P. 735.*

**Amendment Notes**

**2011 amendment,** by G.O. 11-9256 and 11-9260, rewrote the rule, which read: "A party seeking to foreclose a lien created under Tex. Const. art. XVI, § 50(a)(6), for [a] home equity loan, or Tex. Const. art. XVI, § 50(a)(7), for a reverse mortgage, that is to be foreclosed on grounds other than Tex. Const. art. XVI, §§ 50(k)(6)(A) or (B), may file: (1) a suit seeking judicial foreclosure; (2) a suit or counterclaim seeking a final judgment which includes an order allowing foreclosure under the security instrument and Tex. Prop. Code § 51.002; or (3) an application under Rule 736 for an order allowing foreclosure."

## Commentary

**General Comments**



# Tex. R. Civ. P. 736

THIS DOCUMENT IS CURRENT THROUGH August 16, 2020

***TX - Texas Local, State & Federal Court Rules > STATE RULES > TEXAS RULES OF CIVIL PROCEDURE > PART VII. RULES RELATING TO SPECIAL PROCEEDINGS > SECTION 1. Procedures Related to Foreclosures of Certain Liens***

## Rule 736 Expedited Order Proceeding

**736.1.** ***Application.***

**(a)** ***Where Filed.***--An application for an expedited order allowing the foreclosure of a lien listed in Rule 735 to proceed must be filed in a county where all or part of the real property encumbered by the loan agreement, contract, or lien sought to be foreclosed is located or in a probate court with jurisdiction over proceedings involving the property.

**(b)** ***Style.***--An application must be styled "In re: Order for Foreclosure Concerning [state: property's mailing address] under *Tex. R. Civ. P. 736*."

**(c)** ***When Filed.***--An application may not be filed until the opportunity to cure has expired under applicable law and the loan agreement, contract, or lien sought to be foreclosed.

**(d)** ***Contents.***--The application must:

**(1)**Identify by name and last known address each of the following parties:

**(A)**"Petitioner" - any person legally authorized to prosecute the foreclosure;

**(B)**"Respondent" - according to the records of the holder or servicer of the loan agreement, contract, or lien sought to be foreclosed:

**(i)**for a home equity loan, reverse mortgage, or home equity line of credit, each person obligated to pay the loan agreement, contract, or lien sought to be foreclosed and each mortgagor, if any, of the loan agreement, contract, or lien sought to be foreclosed;

**(ii)**for a tax lien transfer or property tax loan, each person obligated to pay the loan agreement, contract, or lien sought to be foreclosed, each mortgagor, if any, of the loan agreement, contract, or lien sought to be foreclosed, each owner of the property, and the holder of any recorded preexisting first lien secured by the property;

**(iii)**for a property owners' association assessment, each person obligated to pay the loan agreement, contract, or lien sought to be foreclosed who has a current ownership interest in the property.

**(2)**Identify the property encumbered by the loan agreement, contract, or lien sought to be foreclosed by its commonly known street address and legal description.

**(3)**Describe or state:

**(A)**the type of lien listed in Rule 735 sought to be foreclosed and its constitutional or statutory reference;

**(B)**the authority of the party seeking foreclosure, whether as the servicer, beneficiary, lender, investor, property owners' association, or other person with authority to prosecute the foreclosure;

**(C)**each person obligated to pay the loan agreement, contract, or lien sought to be foreclosed;

**(D)**each mortgagor, if any, of the loan agreement, contract, or lien sought to be foreclosed who is not a maker or assumer of the underlying debt;

**(E)**as of a date that is not more than sixty days prior to the date the application is filed:

**(i)**if the default is monetary, the number of unpaid scheduled payments,

**(ii)**if the default is monetary, the amount required to cure the default,

**(iii)**if the default is non-monetary, the facts creating the default, and

**(iv)**if applicable, the total amount required to pay off the loan agreement, contract, or lien;

**(F)**that the requisite notice or notices to cure the default has or have been mailed to each person as required under applicable law and the loan agreement, contract, or lien sought to be foreclosed and that the opportunity to cure has expired; and

**(G)**that before the application was filed, any other action required under applicable law and the loan agreement, contract, or lien sought to be foreclosed was performed.

**(4)**For a tax lien transfer or property tax loan, state all allegations required to be contained in the application in accordance with *section 32.06 (c-1)(1) of the Tax Code*.

**(5)**Conspicuously state:

**(A)**that legal action is not being sought against the occupant of the property unless the occupant is also named as a respondent in the application; and

**(B)**that if the petitioner obtains a court order, the petitioner will proceed with a foreclosure of the property in accordance with applicable law and the terms of the loan agreement, contract, or lien sought to be foreclosed.

**(6)**Include an affidavit of material facts in accordance with Rule 166a(f) signed by the petitioner or the servicer describing the basis for foreclosure and, depending on the type of lien sought to be foreclosed, attach a legible copy of:

**(A)**the note, original recorded lien, or pertinent part of a property owners' association declaration or dedicatory instrument establishing the lien, and current assignment of the lien, if assigned;

**(B)**each notice required to be mailed to any person under applicable law and the loan agreement, contract, or lien sought to be foreclosed before the application was filed and proof of mailing of each notice; and

**(C)**for a tax lien transfer or property tax loan:

**(i)**the property owner's sworn document required under *section 32.06 (a-1) of the Tax Code*; and

**(ii)**the taxing authority's certified statement attesting to the transfer of the lien, required under *section 32.06 (b) of the Tax Code*.

**736.2.** ***Costs.***--All filing, citation, mailing, service, and other court costs and fees are costs of court and must be paid by petitioner at the time of filing an application with the clerk of the court.

**736.3.** ***Citation.***

**(a)** ***Issuance.***

**(1)**When the application is filed, the clerk must issue a separate citation for each respondent named in the application and one additional citation for the occupant of the property sought to be foreclosed.

**(2)**Each citation that is directed to a respondent must state that any response to the application is due the first Monday after the expiration of 38 days from the date the citation was placed in the custody of the U.S. Postal Service in accordance with the clerk's standard mailing procedures and state the date that the citation was placed in the custody of the U.S. Postal Service by the clerk.

**(b)** ***Service and Return.***

**(1)**The clerk of the court must serve each citation, with a copy of the application attached, by both first class mail and certified mail. A citation directed to a respondent must be mailed to the respondent's last known address that is stated in the application. A citation directed to the occupant of the property sought to be foreclosed must be mailed to Occupant of [state: property's mailing address] at the address of the property sought to be foreclosed that is stated in the application.

**(2)**Concurrently with service, the clerk must complete a return of service in accordance with Rule 107, except that the return of service need not contain a return receipt. For a citation mailed by the clerk in accordance with (b)(1), the date of service is the date and time the citation was placed in the custody of the U.S. Postal Service in a properly addressed, postage prepaid envelope in accordance with the clerk's standard mailing procedures.

**(3)**The clerk must only charge one fee per respondent or occupant served under this rule.

**736.4.** ***Discovery.***--No discovery is permitted in a Rule 736 proceeding.

**736.5.** ***Response.***

**(a)** ***Generally.***--A respondent may file a response contesting the application.

**(b)** ***Due Date.***--Any response to the application is due the first Monday after the expiration of 38 days from the date the citation was placed in the custody of the U.S. Postal Service in accordance with the clerk's standard mailing procedures, as stated on the citation.

**(c)** ***Form.***--A response must be signed in accordance with Rule 57 and may be in the form of a general denial under Rule 92, except that a respondent must affirmatively plead:

**(1)**why the respondent believes a respondent did not sign a loan agreement document, if applicable, that is specifically identified by the respondent;

**(2)**why the respondent is not obligated for payment of the lien;

**(3)**why the number of months of alleged default or the reinstatement or pay off amounts are materially incorrect;

**(4)**why any document attached to the application is not a true and correct copy of the original; or

**(5)**proof of payment in accordance with Rule 95.

**(d)** ***Other Claims.***--A response may not state an independent claim for relief. The court must, without a hearing, strike and dismiss any counterclaim, cross claim, third party claim, intervention, or cause of action filed by any person in a Rule 736 proceeding.

**736.6.** ***Hearing Required When Response Filed.***--The court must not conduct a hearing under this rule unless a response is filed. If a response is filed, the court must hold a hearing after reasonable notice to the parties. The hearing on the application must not be held earlier than 20 days or later than 30 days after a request for a hearing is made by any party. At the hearing, the petitioner has the burden to prove by affidavits on file or evidence presented the grounds for granting the order sought in the application.

**736.7.** ***Default When No Response Filed.***

**(a)**If no response to the application is filed by the due date, the petitioner may file a motion and proposed order to obtain a default order. For the purposes of obtaining a default order, all facts alleged in the application and supported by the affidavit of material facts constitute prima facie evidence of the truth of the matters alleged.

**(b)**The court must grant the application by default order no later than 30 days after a motion is filed under (a) if the application complies with the requirements of Rule 736.1 and was properly served in accordance with Rule 736.3. The petitioner need not appear in court to obtain a default order.

**(c)**The return of service must be on file with the clerk of the court for at least 10 days before the court may grant the application by default.

**736.8.** ***Order.***

**(a)**The court must issue an order granting the application if the petitioner establishes the basis for the foreclosure. Otherwise, the court must deny the application.

**(b)**An order granting the application must describe:

**(1)**the material facts establishing the basis for foreclosure;

**(2)**the property to be foreclosed by commonly known mailing address and legal description;

**(3)**the name and last known address of each respondent subject to the order; and

**(4)**the recording or indexing information of each lien to be foreclosed.

**(c)**An order granting or denying the application is not subject to a motion for rehearing, new trial, bill of review, or appeal. Any challenge to a Rule 736 order must be made in a suit filed in a separate, independent, original proceeding in a court of competent jurisdiction.

**736.9.** ***Effect of the Order.***--An order is without prejudice and has no res judicata, collateral estoppel, estoppel by judgment, or other effect in any other judicial proceeding. After an order is obtained, a person may proceed with the foreclosure process under applicable law and the terms of the lien sought to be foreclosed.

**736.10.** ***Bankruptcy.***--If a respondent provides proof to the clerk of the court that respondent filed bankruptcy before an order is signed, the proceeding under this rule must be abated so long as the automatic stay is effective.

**736.11.** ***Automatic Stay and Dismissal If Independent Suit Filed.***

**(a)**A proceeding or order under this rule is automatically stayed if a respondent files a separate, original proceeding in a court of competent jurisdiction that puts in issue any matter related to the origination, servicing, or enforcement of the loan agreement, contract, or lien sought to be foreclosed prior to 5:00 p.m. on the Monday before the scheduled foreclosure sale.

**(b)**Respondent must give prompt notice of the filing of the suit to petitioner or petitioner's attorney and the foreclosure trustee or substitute trustee by any reasonable means necessary to stop the scheduled foreclosure sale.

**(c)**Within ten days of filing suit, the respondent must file a motion and proposed order to dismiss or vacate with the clerk of the court in which the application was filed giving notice that respondent has filed an original proceeding contesting the right to foreclose in a court of competent jurisdiction. If no order has been signed, the court must dismiss a pending proceeding. If an order has been signed, the court must vacate the Rule 736 order.

**(d)**If the automatic stay under this rule is in effect, any foreclosure sale of the property is void. Within 10 business days of notice that the foreclosure sale was void, the trustee or substitute trustee must return to the buyer of the foreclosed property the purchase price paid by the buyer.

**(e)**The court may enforce the Rule 736 process under chapters 9 and 10 of the Civil Practices and Remedies Code.

**736.12.** ***Attachment of Order to Trustee's Deed.***--A conformed copy of the order must be attached to the trustee or substitute trustee's foreclosure deed.

**736.13.** ***Promulgated Forms.***--The Supreme Court of Texas may promulgate forms that conform to this rule.

CAUSE NO. ___________________

| | | |
|---|---|---|
| Cynthia Waide<br>*Plaintiff*(s), | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | |
| | § | **TRAVIS** COUNTY, TEXAS |
| Carrington Mortgage<br>Service LLC,<br>*Defendant(s),* | § | |
| | § | |
| | § | ______JUDICIAL DISTRICT |
| | § | |

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULES REGARDING NOTIFYING OPPOSING COUNSEL**

**CERTIFICATE OF CONFERENCE**

I, James Minerve, do hereby certify that I am the attorney for the Plaintiff Cynthia Waide in the above captioned cause, that Tuesday, November 25, 2025, at approximately 6:30 p.m. I faxed the trustee is Crystal G. Gibson, Director of Litigation, Mackie Wolf Zientz & Mann, P.C., a copy of the pleadings informing Crystal Gibson that James Minerve will be submitting an emergency ex parte application for a TRO to the Travis County District Court Duty Judge Wednesday, November 26, 2025, around 8:00 a.m. and will request the Court to sign the TRO Order ex parte in chambers;; I requested that the trustee please call James Minerve with the name and phone number of an attorney who can participate in the TRO hearing via phone, in-person, or via Zoom, Wednesday, November 26, 2025, around 8:00 a.m., and included my cell number in the email. See attached email notice.

The information contained herein is within my knowledge, is true and correct to the best of my knowledge.

/s/ James Minerve

James Minerve
State Bar No. 24008692
The Minerve Law Firm
13276 N HWY 183, ste. 209
Austin, Texas 78750
(888) 819-1440 (Office)
(210) 336-5867 (Mobile)
(888) 230-6397 (Fax)
jgm@minervelaw.com
Attorney for Plaintiff
Cynthia Waide

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document was sent to the following in accordance with the Texas Rules of Civil Procedure on this 26th day of November 2025:

Trustee:
Crystal G. Gibson
Director of Litigation
Mackie Wolf Zientz & Mann, P.C.
14160 Dallas Parkway, Suite 900
Dallas, TX 75254
Direct: (214) 635-2670
Fax: (214) 635-2686
cgibson@mwzmlaw.com

/s/ James Minerve
JAMES MINERVE